1    **DYKEMA GOSSETT LLP**
     Craig N. Hentschel, SBN: 66178
2      *chentschel@dykema.com*
     S. Christopher Winter, SBN: 190474
3      *kwinter@dykema.com*
     333 South Grand Avenue
4    Suite 2100
     Los Angeles, CA 90071
5    Tel.: (213) 457-1800
     Fax: (213) 457-1850
6
     **ROPES & GRAY LLP**
7    Laurence S. Rogers (*Pro Hac Vice*)
       *laurence.rogers@ropesgray.com*
8    Ching-Lee Fukuda (*Pro Hac Vice*)
       *ching-lee.fukuda@ropesgray.com*
9    1211 Avenue of the Americas
     New York, NY 10036-8704
10   Tel.: (212) 596-9000
     Fax: (212) 596-9090
11
     **ROPES & GRAY LLP**
12   Matthew J. Rizzolo (*Pro Hac Vice*)
       *matthew.rizzolo@ropesgray.com*
13   700 12th Street, NW, Suite 900
     Washington, DC 20005-3948
14   Tel.: (202) 508-4600
     Fax: (202) 508-4650
15
     Attorneys for Plaintiff
16   Spark Networks USA, LLC

17            **UNITED STATES DISTRICT COURT**
18            **CENTRAL DISTRICT OF CALIFORNIA**
                    **WESTERN DIVISION**
19

20
21   SPARK NETWORKS USA, LLC,          Case No. 2:11-CV-01430 JHN (JEM)

22            *Plaintiff*,             **PLAINTIFF'S MEMORANDUM IN**
                                       **OPPOSITION TO DEFENDANTS'**
                                       **MOTION TO DISMISS PURSUANT**
23        v.                           **TO FED. R. CIV. P. 12(b)(6)**

24   HUMOR RAINBOW, INC. and           Date:   July 11, 2011
25   ZOOSK, INC.,                      Time:   2:00pm
                                       Court:  790
26            *Defendants*.
                                       The Hon. Jacqueline H. Nguyen
27

28

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1

# TABLE OF CONTENTS

2

3  I.     INTRODUCTION ................................................................................1

4  II.    THE DISCLOSURE AND CLAIMS OF THE '200 PATENT....................4

5         A.     The Patent's Written Description.................................................4

6         B.     The Patent's Claims ..................................................................8

7  III.   ARGUMENT .....................................................................................10

8         A.     Defendants' Clear And Convincing Burden Of Proof....................10

9         B.     Patentability Under 35 U.S.C. § 101 ........................................11

10        C.     The Court Must First Construe Relevant Claim Terms..................12

11        D.     Defendants' Motion Is Premature..............................................12

12        E.     The '200 Patent Claims Are Not Unpatentable Under § 101 .............14

13               1.     A Computer System Is At The Heart Of The Claimed
                        Inventions, And Needed To Provide The Claimed Benefits........14
14
                 2.     The Method Claims Recite Patentable Subject Matter ...............16
15
                        a.     The Claims Are Not Unpatentably Abstract.....................16
16
17                      b.     The Claims Pass The Machine Or Transformation
                               Test ....................................................................19

18                      c.     The Claims Involve A Transformation .............................21

19               3.     The Apparatus Claims Are Not Abstract, And Satisfy Both
                        Prongs Of The Machine Or Transformation Test.........................22
20
                        a.     Apparatus Claim 28................................................23
21
                        b.     Means-Plus-Function Claim 29, And Article Of
22                             Manufacture Claim 31....................................................24

23  IV.    CONCLUSION ...................................................................................25

24

25

26

27

28

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.,*
   98 F.3d 1563 (Fed. Cir. 1996) ...................................................................... 10

*Bilski v. Kappos,*
   130 S. Ct. 3218 (2010) ("*Bilski II*") .................................................... passim

*Bird Barrier Am., Inc. v. Bird-B-Gone, Inc.,*
   No. 09-cv-0418, 2010 WL 761241 (C.D. Cal. Mar. 1, 2010)............................ 13

*Cahill v. Liberty Mut. Ins. Co.,*
   80 F.3d 336 (9th Cir. 1996) .......................................................................... 12

*Chamberlain Group, Inc. v. Lear Corp.,*
   756 F. Supp. 2d 938 (N.D. Ill. 2010).............................................................. 20

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.,*
   2011 WL 802079 (D.D.C. 2011)........................................................17, 18, 22

*Diamond v. Chakrabarty,*
   447 U.S. 303 (1980) ..............................................................................11, 25

*Diamond v. Diehr,*
   450 U.S. 175 (1981) ..............................................................................11, 19

*Edge Capture, L.L.C. v. Barclays Bank PLC,*
   No. 09-cv-1521, 2011 WL 494573 (N.D. Ill. Jan. 31, 2011)............................ 13

*Ex Parte Gloor,*
   No. 2003-1654, 2003 WL 25284334 (B.P.A.I. Nov. 25, 2003)........................ 16

*Graff/Ross Holdings LLP v. Federal Home Loan Mortgage Corp.,*
   No. 07-cv-796, 2010 WL 6274263 (D.D.C. Aug. 27, 2010) ............................ 14

*Harrington Mfg. Co. v. Powell Mfg. Co.,*
   815 F.2d 1478 (Fed. Cir. 1986) ...................................................................... 11

*In re Beauregard,*
   53 F.3d 1583 (Fed. Cir. 1995)........................................................................ 25

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

*In re Bilski,*
   545 F.3d 943 (Fed. Cir. 2008) ("*Bilski I*") ................................... 1, 12, 17, 19, 20

*In re Lowry,*
   32 F.3d 1579 (Fed. Cir. 1994) .............................................................. 19

*Markman v. Westview Instrs.,*
   52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996)................................. 12

*Mendiondo v. Centinela Hosp. Med. Ctr.,*
   521 F.3d 1097 (9th Cir. 2008) .............................................................. 12

*Netword, LLC v. Centraal Corp.,*
   242 F.3d 1347 (Fed. Cir. 2001) ............................................................ 12

*Panduit Corp. v. Dennison Mfg.,*
   810 F.2d 1561 (Fed. Cir. 1987) ............................................................ 11

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) ......................................................... 1, 12

*Progressive Cas. Ins. Co. v. Safeco Ins. Co.,*
   No. 10-cv-1370, 2010 WL 4698576 (N.D. Ohio Nov. 12, 2010)..................... 13

*Research Corp. Techs., Inc. v. Microsoft Corp.,*
   627 F.3d 859 (Fed. Cir. 2010) ....................................................... 1, 11, 18

*Seachange Int'l, Inc. v. C-COR Inc.,*
   413 F.3d 1361 (Fed. Cir. 2005) ............................................................ 20

*SiRF Tech., Inc. v. Int'l Trade Comm'n,*
   601 F.3d 1319 (Fed. Cir. 2010) ............................................................ 19

*Ultramercial, LLC v. Hulu, LLC,*
   2010 WL 3360098 (C.D.Cal. Aug. 13, 2010) .......................................... 13, 14

*United States v. Ritchie,*
   342 F.3d 903 (9th Cir. 2003) .............................................................. 14

*WMS Gaming v. Int'l Game Tech.,*
   184 F.3d 1339 (Fed. Cir. 1999) ............................................................ 24

*Zamani v. Carnes,*
   491 F.3d 990 (9th Cir. 2007) .............................................................. 13

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

## STATUTES

35 U.S.C. § 101................................................................................................passim

35 U.S.C. § 112, ¶ 4.................................................................................................16

35 U.S.C. § 112, ¶ 6..................................................................................3, 9, 10, 24

35 U.S.C. § 282.......................................................................................................11

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(d)...............................................................................................14

Fed. R. Civ. P. 12(b)(6)...............................................................................12, 13, 14

Fed. R. Civ. P.Fed. R. Civ. P. 56............................................................................14

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

## **TABLE OF ABBREVIATIONS**

| | |
|---|---|
| "D Br. __" | Refers to the indicated page(s) of Defendants' opening brief on this motion, PACER Docket No. 29. |
| "Ex. __, p. __" | Refers to the indicated exhibit and page attached to the Declaration Of Matthew Rizzolo, submitted herewith. |
| "Klausner ¶ __" | Refers to the indicated paragraph of the Declaration Of David Klausner, submitted herewith. |
| "SAC ¶ __" | Refers to the indicated paragraph of Plaintiff's Second Amended Complaint, PACER Docket No. 28. |
| "__:__-__" | Refers to the indicated column and lines of U.S. Patent No. 5,950,200. |
| [A], [B], etc. | Bracketed notations appearing in the margins of the claims have been added for convenience of reference. |
| ***Emphasis added*** | All emphasis (**bolded**, *italicized*, or <u>underscored</u>) has been added unless stated as appearing in the original text. |

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

## I.  INTRODUCTION

First and foremost, Defendants' motion to dismiss should be denied because it is premature.  Before their Answers have been filed or any discovery provided, Defendants want this Court to dig deep into the merits.  They ask the Court to invalidate each of the 31 claims of the '200 patent, which the Patent Office said were patentable following 2-1/2 years of examination, without deference to the patent's presumption of validity, based solely on attorney argument that does not consider the proper construction of the claims or the level of ordinary skill in the art.  What's more, Defendants ignore controlling post-*Bilski II* Federal Circuit authority setting the bar in a Section 101 analysis particularly high, and disregard key claim limitations demonstrating that, in fact, each claim is both tied to a particular machine and transforms an article to a different state or thing.

It is Defendants' burden to prove invalidity by clear and convincing evidence. They do not come close to carrying this burden.  The "important first step in a § 101 analysis" is claim construction.  *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008) ("*Bilski I*").  But Defendants make no attempt to explain how the claim language would be understood by a person of ordinary skill in the art in light of the intrinsic and extrinsic evidence, as required by *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).  Defendants also ignore a key Federal Circuit case – *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir. 2010).  That case held that a claim can only be found unpatentable under § 101 if its abstractness "should exhibit itself *so manifestly* as to override the broad statutory categories of eligible subject matter."  *Id.* at 868.  That plainly is not the case here.

Thus, Defendants' motion is premature.  To properly construe the '200 patent claims and then apply the appropriate § 101 tests, black-letter Patent Law requires this Court to consider a plethora of intrinsic and extrinsic evidence beyond the four corners of Plaintiff's Second Amended Complaint.  But consideration of such evidence is not permitted in a Rule 12(b)(6) context.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1    If the Court decides to consider the motion on the merits as a Rule 56 summary

2    judgment motion (it should not), this brief explains why the motion still should be

3    denied.    That explanation itself, however, demonstrates the that the motion is

4    premature, as the Court will have to consider claim construction and evidence that

5    Defendants have not addressed and that cannot be considered in a Rule 12 context.

6    The fundamental premise of Defendants' motion is the assertion that "a

7    computer is not necessary to perform any of the steps outlined in the '200 patent

8    claims" (D Br. 1).  Defendants thus try to apply other cases – including the Supreme

9    Court's *Bilski v. Kappos* decision – in which the claims at issue required no computer

10   and could be infringed mentally.  Those cases are inapposite.  Properly construed and

11   understood, each of the '200 patent claims ***requires*** a computer programmed to

12   perform the specific claimed functions.  The specification teaches that this computer

13   is not merely an insignificant appendage, or used simply to speed up or automate

14   operations.  Rather, the computer is at the very heart of the claimed inventions.

15   Without the computer, the objectives and advantages that the patent states for the

16   invention would not be achieved.

17   The '200 patent claims a novel and non-obvious computerized method and

18   apparatus for notifying individuals of reciprocal interest in each other based on

19   specific criteria.  A central feature of the invention is the confidentiality and complete

20   anonymity that invention provides to users of the system.   These benefits of the

21   claimed inventions are made possible by the use of the expressly claimed computer,

22   which implements the claim steps and elements. Defendants' argument that the '200

23   patent seeks to preempt all uses of an "intermediary" – including a human being – to

24   match two people with reciprocal interests in each other, thus bears no weight.  As

25   explained in the accompanying declaration of David Klausner, a computer and

26   networking expert with decades of experience, when the '200 claims are properly

27   construed from the vantage point of a person of ordinary skill in the art in light of the

28   relevant intrinsic and extrinsic evidence – as this memorandum does but Defendants

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1   failed to do – it is evident that the claims *require* a computer processor to preserve

2   complete anonymity and *preclude* the use of a human "intermediary."

3   Thus, the '200 patent claims are far from manifestly abstract and do not

4   "wholly preempt" any field of endeavor. This is not a case in which the claims seek

5   to preempt the use of a mathematical formula, as in *Gottschalk v. Benson*, 409 U.S.

6   63 (1972), or an economic principle like hedging that a human could perform, as in

7   the *Bilski* cases. Rather, they claim methods that must be implemented by a specially

8   programmed computer to perform the steps or elements that the claims recite. When

9   that is done, the claimed inventions solve a problem and have been widely adopted in

10   successful online dating service websites – including those provided by Defendants.

11   That the claimed inventions are not unpatentably abstract is confirmed by the

12   "machine or transformation" ("MOT") test, which the Federal Circuit and Supreme

13   Court have recognized to be an important "clue" to patentability. Defendants pay lip

14   service to this test, but misapply it by ignoring important claim language. Under a

15   proper application of that test, each of the '200 patent claims is directed to inventions

16   that meet *both* the machine *and* transformation prongs of the test.

17   Defendants focus on the MOT test as applied to method claim 1. Claim 1 does

18   not fail the test. A person of ordinary skill in the art would recognize that the claim,

19   properly construed, is inextricably tied to a particular machine – namely, the claimed

20   computer processor that the claim says performs each claim step. Only the claimed

21   processor specially programmed to perform claim 1, and not a human being, can

22   provide the confidentiality and complete anonymity that is repeatedly emphasized

23   throughout the intrinsic evidence as an important feature of the '200 invention.

24   Defendants' arguments that the apparatus claims are also not tied to particular

25   machines, even means-plus-function apparatus claim 29, similarly have no merit. 35

26   U.S.C. § 112, ¶ 6 and the Federal Circuit require a computer-implemented means-

27   plus-function claim like claim 29 to be construed to include the *specific* hardware and

28   software structure disclosed in the patent for performing the claimed functions. This

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1  is the antithesis of being unpatentably "abstract" and not tied to a *particular* machine.

2  And when properly construed, the other apparatus claims – each of which expressly

3  requires a programmed computer to implement – also are tied to particular machines.

4  Finally, all of the '200 patent claims involve patentable transformations. Each

5  claim, under precisely stated circumstances, transforms input data received from two

6  users into concrete and tangible electronic notifications. The Federal Circuit has long

7  recognized that transformations like this satisfy the MOT test.

8  **II.     THE DISCLOSURE AND CLAIMS OF THE '200 PATENT**

9  **A.     The Patent's Written Description**

10  The '200 patent was filed very early in the history of Internet dating in January

11  1997. It claims a computerized method and apparatus for confidentially determining

12  whether two people are interested in one another based on specific information

13  entered by users and notifying them of a match "if and only if" both individuals

14  expressed a reciprocal interest in each other.

15  The claimed inventions solved a problem in the art – the need for a way for two

16  people who might be shy, fearful of rejection, or embarrassed, to express an interest

17  in someone else in a manner that assured complete confidentiality and anonymity. In

18  the "Background of the Invention" and "Summary of the Invention," the patent states:

19  Often, even when two people want to initiate first steps in a relationship,
20  neither person takes action because of shyness, fear of rejection, or other
   societal pressures or constraints. ... What is needed is a safe, simple,
21  *confidential,* and non-judgmental way for people to reveal their true
   feelings and interests without risk of embarrassment or rejection.

22  * * *

23  The present invention overcomes the problems and disadvantages
   of the prior art by ... *confidentially* determining whether two people feel
24  mutual attraction or interest ...*while maintaining complete anonymity*
   unless a match of feelings or interests occurs.

25  * * *

26  Thus, the present invention provides a *safe, confidential and non-*
   *judgmental* way for people to make their feelings and interests known
27  without risk of embarrassment or fear of rejection. ... The system
   *maintains the anonymity of the participants* because no notification
28  occurs unless the system determines that a match in feelings or interests
   exists.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1 (Ex. A, Abstract; 1:14, 17-20, 31-34, 61-2:2; Klausner ¶¶ 22-25).   Given these

2 benefits, the inventions of the '200 patent not surprisingly have been widely adopted

3 in successful dating service websites.   This includes Defendant Humor Rainbow's

4 "Quickmatch" feature, and Defendant Zoosk's "ZSMS" feature (SAC ¶¶ 17, 19).

5 These stated objects and goals are achieved in the '200 patent by a specially

6 programmed computer system for "*confidentially* determining matches in feelings

7 and interests entered into the system by human beings and for notifying the human

8 beings *only* in cases when a mutual match in feelings in interests occurs."   In the

9 absence of a mutual match, "*only the computer system will be aware* of the first

10 person's feelings for the second person" (Ex. A, Abstract).   As expert Klausner

11 explains, maintaining confidentiality "is a critically important feature and benefit of

12 the invention of the '200 patent" that use of a human intermediary "would not

13 achieve" (Klausner ¶ 22).

14 The patent discloses at least two exemplary embodiments of a specially

15 programmed computer system for implementing the claimed inventions (Klausner

16 ¶¶ 32-34).  Fig. 1 shows part of one embodiment (Ex. A).

17 As shown in this figure, the

18 disclosed system includes hardware and

19 software.     The   hardware   includes   a

20 computer 101 with processor 102, a

21 display 132, an input device 134 (*e.g.*,

22 mouse), a disk drive or CD drive 136, and

23 a memory 104.   The memory stores a

24 database 116 and "detector software" 112.

25 The detector software is what specially

26 programs processor 102 to implement the

27 invention (Ex. A, 2:51-53, 3:21-32). The

28 computer system can communicate with other computers on the network (*Id.*, 3:33-



FIG. 1

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1    37).   Figure 9 shows the system implemented on the Internet (World Wide Web) (*Id.*,

2    3:5-6; Klausner ¶ 50).



FIG. 3

Exemplary flowcharts of exemplary programs implemented by the "detector software" of Figure 1 are shown in Fig. 3 and 4A (Ex. A).  Fig. 3 enables the system to receive data entered into the system.

In Fig. 3, a first user electronically enters his or her "user ID" (step 304) and the user IDs of other persons (*e.g.*, a second user – called "objects") known to the first user and in whom the first user is interested (step 306).  The type of interest (*e.g.*, love, like) may also be entered.  Other users enter the user IDs of persons in whom they are interested.  A user ID (number, email address, name, etc.) identifies a specific person.  The entered data are received by the computer (Ex. A, 5:17-35; Klausner ¶¶ 30, 35, 49).

17    Fig. 6B shows an exemplary display

18    generated using detector software 112 to

19    facilitate entering user ID and attraction data.

20    In this screen, the first user's ID is typed into a

21    field 604, and the user IDs of other persons in

22    whom the first user is interested are either

23    typed into fields 606 or simply selected from a

24    list (fields 612).  The type of interest is selected

25    in fields 602.  These data are entered into by

26    the Fig. 3 software when "Enter" button 608 is

27    clicked (Klausner ¶ 35).



FIG. 6B

28    The user IDs and other data received by the computer are stored in database

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

116 at step 308 (Ex. A, 4:44-5:16; Klausner ¶¶ 31, 34).  An exemplary database is depicted in Fig. 7A (Ex. A, 6:39-50; Klausner ¶ 36):

| User ID | Objects | | | | | Type of Attraction |
|---|---|---|---|---|---|---|
| John@yahoo.com | Kim@lycos.com | | | | | love |
| Paul@yahoo.com | Kim@lycos.com | John@yahoo.com | Linda@excite.com | Tom@Compuserve.com | | like |
| Linda@excite.com | Tom@Compuserve.com | Kim@lycos.com | | | | like |
| Kim@Lycos.com | John@yahoo.com | | | | | love |
| Tom@Compuserve.com | Linda@excite.com | | | | | love |

FIG. 7A

The program of Fig. 4A is now executed using the information in the database to determine whether two users of the system are mutually interested in one another. This software causes at least two determinations to be made for each of a pair of first and second users.  For each of first and second users, a determination is made whether a user ID of a person in whom the first (or second) user has an interest (*i.e.*, an object in the database for the user) matches a user ID of the second (or first) user (*i.e.*, someone in the left-most column of the database) (Ex. A, 5:55-6:09, 6:26-38; Klausner ¶¶ 37-39).



FIG. 4A

If and only if the program of Fig. 4A determines there is a match – *i.e.*, each of two users is mutually interested in the other – step 410 notifies both users of their reciprocal interest (Ex. A, 6:62-63; Klausner ¶ 40).  As with the data receiving and determining steps, the notifying is performed *entirely by the computer system without action taken by or knowledge of any human intermediary*.  Notification occurs by automatically sending an e-mail (Ex. A, FIGS. 8(a)-(b), 6:66-7:6), placing a telephone call (7:25-27), or sending a

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

message over the Internet to a user's computer display (7:27-28) (Klausner at ¶ 40).

The above explanation of one of the patent's embodiments makes plain that the computer is not simply used to speed things up. There is no discussion in the patent of an object of the invention being merely to quicken the matching process. Rather, the computer is at the heart of the invention. Because no human beings are involved in the receiving, determining, matching, or notification processes, and only the computer "knows" of a person's interest in another, the patent's goals of maintaining confidentiality and complete anonymity are achieved (Klausner ¶ 42).

## B.    The Patent's Claims

The '200 patent claims are not for an abstract idea that may be performed by a human intermediary. The express claim language requires a specially programmed computer that can confidentially receive data concerning users' interests in other users, analyze the data it has received to make certain determinations, and then electronically send notification messages "if and only if" specific criteria are met.

Claim 1 is for a computerized method that notifies people of a reciprocal interest in each other. It recites as follows (Ex. A, 8:45-65):

1.    A method that notifies people that they feel reciprocal interest for each other, comprising the steps, *performed by a processor of a data processing system having a memory*, of:

[A]    receiving *input* from a first user indicating a user ID of a specific person in whom the first user has an interest, the first user already being aware of the existence of the person whose ID they entered;

[B]    receiving *input* from a second user indicating a user ID of a specific person in whom the second user has an interest, the second user already being aware of the existence of the person whose ID they entered;

[C]    determining whether the user ID of the person in whom the first user has an interest matches a user ID of the second user;

[D]    determining whether the user ID of the person in whom the second user has an interest matches a user ID of the first user; and

[E]    *if and only if* a match occurs in both of the determining steps, *notifying* the first user and the second user that a match has occurred.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1  As explained below, proper construction of at least the emphasized claim terms

2  establishes that claim 1 – as well as each of its independent claims – passes both

3  prongs of the MOT test and claims patentable subject matter under § 101.

4      The remaining independent claims are even more plainly for a "particular

5  machine," for they claim specifically recited apparatus rather than methods.  Claim

6  28 recites, in pertinent part (Ex. A, 10:28-52):

7      28.  An *apparatus* that notifies people that they feel reciprocal interest
        for each other, comprising:
8
9      [A]  a first *input portion*, *configured* to receive input from a first user
             ...;

10     [B]  a second *input portion*, *configured* to receive input from a second
             user ...;
11
12     [C]  a first *determining portion*, *coupled* to the first and second input
             portions, *configured* to determine ...;

13     [D]  a first *determining portion*, *coupled* to the first and second input
             portions, *configured* to determine ...; and
14
15     [E]  a *notifying portion*, *coupled* to the first and second determining
             portions, *configured* to notify the first user and the second user *if*
16           *and only if* the first and second determining portions have
             detected a match.

17  Again, proper construction of the emphasized portions shows that claim 28

18  passes the MOT test and is not for an abstract idea.

19      Claim 29, also for an apparatus, is written in "means-plus-function" format

20  pursuant to 35 U.S.C. § 112, ¶ 6.  It recites, in pertinent part (Ex. A, 10:53-11:4):

21     29.  An *apparatus* that notifies people that they feel reciprocal interest
        for each other, comprising:
22
23     [A]  *means* for receiving *input* from a first user indicating a user ID of
             a specific person in whom the first user has an interest ...;

24     [B]  *means* for receiving *input* from a second user indicating a user ID
             of a specific person in whom the second user has an interest ...;
25
26     [C]  *means* for determining whether the user ID of the person in whom
             the first user has an interest matches a user ID of the second user
27           and for determining whether the user ID of the person in whom
             the second user has an interest matches a user ID of the first user;
             and
28
       [D]  *means* for, coupled to the determining means, *if and only if a*

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

match occurs in both of the determining means, *notifying* the first user and the second user that a match has occurred.

As discussed *infra*, when properly construed pursuant to § 112, ¶ 6, each of the underscored functions in this claim correlate to specific hardware and software disclosed by the patent and, again, the claim passes both MOT test prongs.

Finally, claim 31 is for an article of manufacture – another class of statutory subject matter under § 101. It recites, in pertinent part (Ex. A, 11:14-12:21):

> 31.   A *computer program product*, comprising:
>
> [A]   a *computer usable medium* having computer readable code embodied therein for notifying people that they feel reciprocal interest for each other, including:
>
> [B]   computer readable program code devices *configured* to cause a computer to effect receiving input from a first user indicating a user ID of a specific person in whom the first user has an interest ...;
>
> [C]   computer readable program code devices *configured* to cause a computer to effect receiving input from a second user indicating a user ID of a specific person in whom the second user has an interest ...;
>
> [D]   computer readable program code devices *configured* to cause a computer to effect determining whether the user ID of the person in whom the first user has an interest matches a user ID of the second user;
>
> [E]   computer readable program code devices *configured* to cause a computer to effect determining whether the user ID of the person in whom the second user has an interest matches a user ID of the first user; and
>
> [F]   computer readable program code devices configured to cause a computer to effect, *if and only if* a match occurs in both of the programming code devices, notifying the first user and the second user that a match has occurred.

Like its brethren independent claims, this claim also passes both prongs of the MOT test and is patentable subject matter under § 101.

## III.   ARGUMENT

### A.   Defendants' Clear And Convincing Burden Of Proof

Patent Office examiners are presumed to have properly performed their duties in issuing a patent, including with respect to § 101. *Applied Materials, Inc. v.*

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1    *Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1569 (Fed. Cir. 1996);

2    Ex. F, *MPEP* 6th ed. rev 3 (1997) at Ch. 2106, pp. 335-351. Patents are therefore

3    presumed valid. 35 U.S.C. § 282; *Panduit Corp. v. Dennison Mfg., Co.*, 810 F.2d

4    1561, 1570 (Fed. Cir. 1987). As the Supreme Court confirmed last week, Defendants

5    thus must prove invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i*

6    *LP*, No. 10-290, 2011 WL 2224428, at *4-5 (U.S. June 9, 2011). This burden

7    remains with Defendants; Plaintiff never bears the burden of proving validity.

8    *Harrington Mfg. Co. v. Powell Mfg. Co.*, 815 F.2d 1478, 1482 (Fed. Cir. 1986).

9    **B.    Patentability Under 35 U.S.C. § 101**

10       The Patent Act broadly provides that "[w]hoever invents or discovers ***any*** new

11    and useful process, machine, manufacture, or composition of matter, or ***any*** new and

12    useful improvement thereof, may obtain a patent therefor, subject to the conditions

13    and requirements of this title." 35 U.S.C. § 101. "The Supreme Court recently

14    reemphasized the significance of these broad statutory categories with the broadening

15    double 'any' exhortation …." *Research Corp. Techs.*, 627 F.3d at 867 (citing *Bilski*

16    *v. Kappos*, 130 S. Ct. 3218, 3225 (2010) ("*Bilski II*")). As the Supreme Court has

17    said, "Congress intended statutory subject matter to 'include anything under the sun

18    that is made by man.'" *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980).

19       There are only three narrow exceptions to the broad patent-eligibility principles

20    of Section 101 – "laws of nature, physical phenomena, and abstract ideas." *Bilski II*,

21    130 S. Ct. at 3225. The Supreme Court has never provided clear guidance as to what

22    constitutes an "abstract idea." *Id.* at 3236 (Stevens, J., concurring). But given the

23    sheer breadth of Section 101, the Federal Circuit has held that a patent claim should

24    not be found to be for an unpatentable abstract idea unless that abstractness

25    "exhibit[s] itself ***so manifestly*** as to override the broad statutory categories of eligible

26    subject matter." *Research Corp. Techs.*, 627 F.3d at 868.

27       The appropriate analysis of whether a claim satisfies § 101 requires viewing

28    the claim ***as a whole***. *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981). "[I]t is

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1  irrelevant that any individual step or limitation of such processes by itself would be

2  unpatentable under § 101." *Bilski I*, 545 F.3d at 958.

3  **C.   The Court Must First Construe Relevant Claim Terms**

4  The claims of a patent define the bounds of the invention. *Phillips*, 415 F.3d at

5  1312.   Therefore, in undertaking a § 101 analysis, this Court must first construe

6  relevant disputed terms of the claims. *Bilski I*, 545 F.3d at 951 ("claim construction

7  ... is an important first step in a § 101 analysis").   Claim construction is a question of

8  law for the Court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967,

9  979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).

10  Claim construction thus "is the judicial statement of what is and is not covered

11  by the technical terms and other words of the claims." *Netword, LLC v. Centraal*

12  *Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001).   In construing the claims, a court should

13  use intrinsic evidence such as the patent claims, specification, and prosecution

14  history, as well as, if helpful, extrinsic evidence such as expert testimony,

15  dictionaries, and learned treatises. *Phillips*, 415 F.3d at 1317-18.

16  **D.   Defendants' Motion Is Premature**

17  In deciding a Rule 12(b)(6) motion, this Court must assume the plaintiff's

18  allegations are true and construe the complaint in the light most favorable to the non-

19  moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

20  Dismissal is only appropriate where the complaint lacks a cognizable legal theory or

21  sufficient facts to support such a theory.   *Mendiondo v. Centinela Hosp. Med. Ctr.*,

22  521 F.3d 1097, 1104 (9th Cir. 2008).   That is not the case here.

23  To succeed on their motion to dismiss, Defendants must show by clear and

24  convincing evidence that the Patent Office erred in issuing each of the 31 claims of

25  the '200 patent. *Impax Labs., Inc. v. Aventis Pharms. Inc.*, 545 F.3d 1312, 1314 (Fed.

26  Cir. 2008). But this Court's inquiry in evaluating a Rule 12(b)(6) motion is limited to

27  the sufficiency of the facts alleged by Plaintiff's complaint – one of which is that the

28  '200 patent "was duly and legally issued" – *i.e.*, it is valid (SAC, ¶ 16).   It does not

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1    extend to evaluating the merits of the parties' allegations. *See Zamani v. Carnes*, 491

2    F.3d 990, 996-97 (9th Cir. 2007). Yet, that is what Defendants seek now to do.

3          The limited record currently before the Court consists of only the complaint

4    and the '200 patent. The parties have not yet provided any discovery. The lengthy

5    and complex process of construing the claims, a necessary first step in any § 101

6    analysis, has not yet begun. But, as emphasized in the foregoing claim recitations

7    (*supra*, pp. 8-10), and as explained below (Section III), numerous claim terms and

8    phrases must be construed before reaching the merits of Defendants' motion.

9          Under these circumstances, Defendants cannot carry their high burden of

10   proving invalidity in a Rule 12(b)(6) context. The motion is premature. *See Bird*

11   *Barrier Am., Inc. v. Bird-B-Gone, Inc.*, No. 09-cv-0418, 2010 WL 761241, at *3

12   (C.D. Cal. Mar. 1, 2010) (declining to rule on a Rule 12(b)(6) motion because a claim

13   construction analysis is "inappropriate at this stage in the litigation"). *See also*

14   *Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, No. 10-cv-1370, 2010 WL 4698576, at

15   *4 (N.D. Ohio Nov. 12, 2010) ("The record that the Court may consider on a 12(b)(6)

16   motion … is insufficient for the Court to construe the patent claims contrary to

17   plaintiffs' allegations of infringement and rule that it is invalid"); *Edge Capture,*

18   *L.L.C. v. Barclays Bank PLC*, No. 09-cv-1521, 2011 WL 494573, at *1 (N.D. Ill. Jan.

19   31, 2011) ("judgment on the pleadings as to invalidity under § 101 would be

20   inappropriate"); *Deston Therapeutics LLC v. Trigen Labs., Inc.*, 723 F. Supp. 2d 665,

21   670-71 (D. Del. 2010) (cases declining to construe claims on a motion to dismiss).

22         *Ultramercial, LLC v. Hulu, LLC*, No. 09-cv-06918, 2010 WL 3360098 (C.D.

23   Cal. Aug. 13, 2010) is the only case Defendants cite where a court invalidated a

24   patent under § 101 on a Rule 12(b)(6) motion. But that case was nothing like this

25   one. First, *Ultramercial* involved no claim construction issues. As the court said,

26   "there is no need to formally construe any of the claims. The patent terms are clear,

27   and Plaintiff has not brought to the Court's attention any reasonable construction that

28   would bring the patent within patentable subject matter." *Id.* at *6. Here, Spark has

1   provided several claim constructions and expert testimony demonstrating that the

2   patent claims at issue recite patentable subject matter (*infra*, pp. 14-25).   Second,

3   unlike the '200 patent claims, the *Ultramercial* claims did not require a machine to

4   perform the method.  *Id.* at *4.  The claims were thus like those in *Bilski I*, which

5   could be practiced manually or mentally and which led the court to invalidate.  The

6   claims here are the antithesis of the *Bilski II* claims (*supra*, pp. 8-10).

7        Should the Court desire to construe the '200 patent claims at this early stage (it

8   should not), this Court must treat Defendants' motion as one for summary judgment

9   and consider all relevant evidence.  This includes the patent's prosecution history and

10  cited prior art (Exs. B, C), dictionaries (Exs. D, E), and the declaration of Plaintiff's

11  technical expert David Klausner explaining why the patent claims pass the MOT test

12  and are not abstract.  *See* Fed. R. Civ. P. 12(d); *United States v. Ritchie*, 342 F.3d

13  903, 907-08 (9th Cir. 2003); *Graff/Ross Holdings LLP v. Fed. Home Loan Mortg.*

14  *Corp.*, No. 07-cv-796, 2010 WL 6274263, at *2 (D.D.C. Aug. 27, 2010) (applying

15  Rule 56 standard to 12(b)(6) motion based on alleged non-compliance with § 101).

16       **E.   The '200 Patent Claims Are Not Unpatentable Under § 101**

17       The evidence discussed below shows that Defendants cannot prove by clear

18  and convincing evidence that any of the '200 patent claims is invalid under § 101.

19       **1.   A Computer System Is At The Heart Of The Claimed**

20            **Inventions, And Needed To Provide The Claimed Benefits**

21       The foundation of Defendants' theory that the '200 patent claims cover the

22  abstract idea of using any intermediary – including a human being – to introduce two

23  people who have reciprocal interests in each other, is the false premise that a

24  computer is not needed to practice the claims (D Br. 1).  In reality, all the claims

25  require a specially programmed computer to implement the invention and to achieve

26  the invention's benefits.  They cannot be done mentally, or by a human being.

27       The computer of the claims is not used simply to "automate" a process as

28  Defendants assert (D Br. 1, 2, 10).  Rather, the computer is what *enables* the claimed

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

invention to achieve the patent's stated benefits and objects of "complete confidentially" and "anonymity" for users (Klausner ¶¶ 20-25).  A user of the invention does not have to reveal her interest in another person to a human intermediary, or be concerned that her feelings will be revealed to anyone if the other person in whom she is interested is not interested in return.  Complete anonymity is maintained for unilaterally expressed interests, thus preventing the embarrassment often associated with revealing one-sided feelings to someone else.

The patent's specification repeatedly emphasizes the importance of confidentiality and anonymity in the claimed inventions:

> This application relates to computer software and, specifically, to a method and apparatus for *confidentially* determining matches in feelings and interests . . . . (Ex. A, 1:8-10)

> Human relationships are often fraught with difficulties.  In addition, human beings are *risk-adverse*.  Often, even when two people want to initiate first steps in a relationship, neither person takes action because of *shyness*, *fear of rejection*, or other societal pressures or constraints . . . . What is needed is a *safe*, simple, *confidential*, and *non-judgmental* way for people to reveal their true feelings and interests *without risk of embarrassment or rejection*. (*Id.*, 1:16-34)

> The present invention overcomes the problems and disadvantages of the prior art by automating the process of *confidentially* determining whether two people feel mutual attraction or interest ... while maintaining *complete anonymity* unless a match of feelings or interests occurs. (*Id.*, 1:38-44)

> Thus, the present invention provides an [sic] provides a *safe*, *confidential* and *non-judgmental* way for people to make their feelings and interests known *without risk of embarrassment* of [sic] f*ear of rejection*. . . . The system maintains the *anonymity* of the participants. . . . If A's feelings are not mirrored by B, the system will not notify B and *only the computer system will be aware* of A's feelings for B. (*Id.*, 1:61-2:7)

The intrinsic evidence of the prosecution history is in accord:

> Applicants have described some versions of their invention as providing "MAN," which stands for "Mutually Assured Non-embarrassment." *Avoiding embarrassment or rejection are very important services provided by certain embodiments of the present invention.* ... Thus, in these embodiments, it is only when the first and second users enter each other's IDs that the invention performs notification. Thus, *if and only if* the first user enters the second user's ID and the second user enter the first user's ID, the invention of claim 1 notifies the first and second user that a match has occurred.  If no match occurs, i.e., if there is no reciprocal interest between the first and second user, no notification

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1   occurs, and *the users feelings are preserved in confidence.*

2   (Ex. B, Pros. History at p. 147, (Amendment A, p. 10); underscoring in

3   original).

4       These central features of confidentiality and anonymity require a computer to

5   implement the invention.  The patent itself says, "*only* the computer system will be

6   aware" of one user's feelings for another, until a match has been determined (Ex. A,

7   Abstract).  It is the computer that provides these benefits; Defendants' hypothesized

8   human intermediary cannot (Klausner ¶¶ 20-25).  Defendants' argument that a

9   computer is not necessary to the invention, and is simply an "appendage" to

10   "automate" things, thus fails.  A specially programmed computer *is* the invention.

11           2.      **The Method Claims Recite Patentable Subject Matter**

12               a.      **The Claims Are Not Unpatentably Abstract**

13       Claims 1-27 are method claims, reciting a series of steps.  Claim 1 is

14   independent.  Claims 2-27 each depend from claim 1.  Thus, each dependent claim

15   includes the method steps of claim 1, plus whatever limitations the dependent claim

16   adds. 35 U.S.C. § 112, ¶ 4.  We focus, therefore, on method claim 1.[1]

17       The express language of method claim 1 plainly requires a computer system

18   processor to perform each and every claim step.  First, claim 1 states that it is a

19   method "performed by a processor of a data processor system" (*supra*, p. 8).  This is

20   consistent with the patent's specification, which throughout discloses computer 101

21   with processor 102 executing special "detector software" 112 depicted, in one

22   embodiment, in Figs. 3 and 4A as performing the entire method (*supra*, pp. 6-7;

23   Klausner ¶ ¶ 30-31, 37-40, 49).  It thus is the claimed computer, and not a human

24   being, that performs claim 1's steps of "receiving" user inputs (steps [A]-[B]),

25   "determining" matches (steps [C]-[D]), and "notifying" users "if and only if" there is

26

27   [1]   If an independent claim claims patentable subject matter under § 101, it follows
     that a dependent claim – which provides additional limitations – also should.  To say
28   otherwise would be "inconsistent."  *E.g.*, *Ex parte Gloor*, No. 2003-1654, 2003 WL
     25284334, at *3 (B.P.A.I. Nov. 25, 2003).

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1    a match in the determining steps (step [E]) (*supra*, p. 8; Klausner ¶¶ 50-52).

2        Second, other properly construed claim language also shows that a computer is

3    required to perform the method, and not a human being like a "mutual friend" or "any

4    form of intermediary" (D Br. 6, 18).  Claim 1, steps [A] and [B], recite "receiving

5    ***input***" from first and second users.  Contemporary dictionaries, and expert Klausner,

6    show that a person of ordinary skill in the art would understand the term "input" to

7    mean "information entered into a ***computer or program*** for processing" (Exs. D-E;

8    Klausner ¶ 53).    This is consistent with the specification, which discloses the

9    "receiving input" steps as performed not by a human being, but by processor 102

10   executing step 306 of special detector software 112 (Klausner ¶ 51).

11       Third, claim 1's last step says the two users are notified "if and only if" both

12   expressed interest for each other in the determining steps (a "match" in both steps).

13   This limitation is what achieves the confidentiality and anonymity benefits repeatedly

14   spotlighted by the specification and prosecution history.    The patent says "***only*** the

15   computer system will be aware" of the feelings one person has for another prior to

16   this notification (*supra*, p. 5).    This step thus must be performed by the claimed

17   processor, just like the claim says it is, and not by a human being (Klausner ¶ 54).

18       Method claim 1, thus, is not like any of the vague risk hedging claims held

19   unpatentably abstract by the Supreme Court in *Bilski II* (D Br. 6).    There, the claims

20   did not recite the use of ***any*** type of hardware or computerized system; they included

21   steps such as "initiating a series of transactions" and "identifying market participants"

22   that could be performed manually, or entirely in the mind. *Bilski II*, 130 S. Ct. at

23   3223-24; *see also Bilski I*, 545 F.3d at 965 (characterizing the unpatentable claim as a

24   "purely mental process").  In contrast, the '200 patent claims specifically recite and

25   need a computer, and the patent's disclosure explains how the claimed invention

26   achieves the stated benefits ***because*** of that computer (Klausner ¶¶ 21-25).

27       Defendants' reliance on *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, No. 07-CV-

28   974, 2011 WL 802079 (D.D.C. Mar. 9, 2011) is also misplaced (D Br. 16-18).  *CLS*

1    *Bank* was decided on summary judgment, years after the action was filed, and

2    involved an agreed-upon claim construction. 2011 WL 802079, at *14. Plus, the

3    claims there recited *no* limitation to any computer – an important factor in the court's

4    analysis. *See* 2011 WL 802079, at *17-18 ("The claims make no mention of any

5    specific hardware," "Alice's expert acknowledges that the claims could be performed

6    in a non-electronic format," "[t]he method … does not require the use of computers,"

7    and "the claims … are not meaningfully limited by a computer since the computer is

8    not essential to the operation of the methods."). This reasoning cannot apply here.

9        Here, by contrast, a processor is claimed and is *essential* to the operation of the

10   claimed methods (Klausner ¶¶ 48-55). The method claims present "functional and

11   palpable applications" in the field of online dating services, *Research Corp. Techs.*,

12   627 F.3d at 868, by providing a "safe, simple, *confidential*, and non-judgmental way

13   for people to reveal their true feelings without risk of embarrassment or rejection"

14   (*supra*, pp. 4, 15). In *Research Corp. Techs.* – a post-*Bilski II* Federal Circuit

15   § 101decision – the Federal Circuit upheld the claims under § 101, noting that

16   claimed "memory" and "printer and display devices" confirmed that the claims were

17   patentable and not a mere abstract idea. 627 F.3d at 869. Similarly, the method

18   claims at issue here all require a computer processor, memory, and "inputs" received

19   by the processor (*supra*, pp. 8, 16 n. 2; Klausner ¶¶ 48-54).

20       Finally, the PTO's Interim Guidance relied upon by Defendants (D Br.

21   18) does not demonstrate abstract unpatentability. To the contrary, there is no

22   question that a "specific machine or apparatus" – the "processor of a data processing

23   system having a memory" – is claimed in claim 1 (Klausner ¶¶ 48-51). Furthermore,

24   that processor is inextricably integral to – the *sine qua non* of – the claimed process

25   (Klausner ¶ 55), and not "merely an object on which the method operates." 75 Fed.

26   Reg. at 43,925. Without the processor, there is no invention (Klausner ¶¶ 54-55).

27   That processor, executing the "if and only if" claim limitation, is what provides the

28   confidentiality and anonymity benefits of the invention. The claimed inventions

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1   cannot be performed without the computer (Klausner ¶¶ 54-55).

2        Claim 1, therefore, is not abstract.  The claimed processor performs each claim

3   step and places a meaningful limit on the scope of the claim.  *SiRF Tech., Inc. v. Int'l*

4   *Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010):

> In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly .... We are not dealing with a situation in which there is a method that can be performed without a machine.  Contrary to appellants' contention, there is no evidence here that the calculations here can be performed entirely in the human mind.  Here, as described, the use of a GPS receiver is essential to the operation of the claimed methods.

Nor does claim 1 attempt to "wholly preempt" a field of endeavor.  *Diehr*, 450 U.S. at

187 ("Their process admittedly employs a well-known mathematical equation, but

they do not seek to pre-empt the use of that equation.  Rather, they seek only to

foreclose from others the use of that equation in conjunction with all of the other

steps in their claimed process.").

### b.   The Claims Pass The Machine Or Transformation Test

Defendants wrongly argue that the method claims do not satisfy the MOT test

(D Br. 9-16).  They do.

Though not the exclusive test for patentable subject matter, the MOT test

is nevertheless a good "clue" to patentability.  *Bilski II*, 130 S. Ct. at 3227.  The MOT

test has two prongs, just one of which needs to be satisfied to pass the test.  *Bilski I*,

545 F.3d at 954, 961.  The first prong asks whether the claimed subject matter "is tied

to a particular machine or apparatus."  *Bilski I*, 545 F.3d at 954.  This involves

showing that the claim is limited to a particular machine, that the machine imposes

meaningful limits on the claims' scope, and that the machine's involvement in the

claim is not merely insignificant extra-solution activity.  *Id.* at 961-62.

The second branch of the MOT inquiry asks whether the claim "transforms a

particular article into a different state or thing."  *Bilski I*, 545 F.3d at 954, 961-62.

The Federal Circuit has long held that data is structure, *In re Lowry*, 32 F.3d 1579,

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1583 (Fed. Cir. 1994) (stored data is the "essence of electronic structure"), and the transformation of one type of data into another type that produces a tangible, concrete, real-world result satisfies the MOT test. *See, e.g., In re Alappat*, 33 F.3d 1526, 1544 (Fed. Cir. 1994) (machine for transforming input waveform data into display output of illumination intensity data held patentable under § 101).

A claim passing the MOT test is not unpatentably abstract. That is the case here. While satisfying either prong of the test will suffice to pass it, as discussed below the '200 patent claims satisfy ***both*** prongs (Klausner ¶¶ 19, 47).

**Tied To A Particular Machine.** As earlier discussed, each of the method claims, properly construed, requires a computer processor to perform the claims' two receiving, two determining, and "if and only if" notifying steps.[2] The claimed methods cannot be performed without that processor, and do not cover a human being performing the steps (*supra*, pp. 5, 8, 14-16).

Because the computer processor is both claimed and an essential, meaningful feature of the invention, the claimed methods necessarily are tied to a particular machine. The processor imposes "meaningful limits" on the claim's scope (*see supra*, pp. 14-16), and does not provide "insignificant extra-solution activity." *See Bilski I*, 545 F.3d at 961. Like in *Chamberlain Group, Inc. v. Lear Corp.*, 756 F. Supp. 2d 938, 969 (N.D. Ill. 2010), the programmed processor here "constitutes the very heart of the invention" by providing for the confidentiality that a human being cannot provide. *See also* Ex. G, *Big Baboon, Inc.*, No. 09-cv-01198, at *23 (claimed database server found to be "central to each and every claim at issue").

This, then, is not a case in which a computer is only nominally recited in the claims, if at all. The cases relied on by Defendants (D Br. 11-14) are thus

---

[2]   The phrase "performed by a processor of a data processing system having a memory" appears in claim 1's preamble. The language limits the claim by virtue of the words expressly requiring that each claim step be "performed" by the processor, and the patent's disclosure of the processor as providing the invention's confidentiality benefits. The phrase thus breathe life and meaning into the claim. *Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1376-77 (Fed. Cir. 2005).

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1   distinguishable.[3] Defendants point to no case in which a claim was held unpatentably

2   abstract where, as in the '200 patent claims, a computer was expressly recited as

3   performing each step and, rather than simply automating or speeding up a process,

4   was necessary for achieving a tangible, real-world benefit or goal – here,

5   confidentiality and anonymity.

### c.     The Claims Involve A Transformation

7       Defendants assert the method claims do not transform an article (D Br. 14).

8   Defendants can do so only by ignoring what the claims really say.

9       Steps [A] and [B] of claim 1 recite receiving "inputs" from first and second

10  users identifying the user IDs of other persons in whom the users have an interest

11  (*supra*, p. 8). These data are evaluated by the processor to determine matches (steps

12  [C], [D]). "If and only if" there is a match in both determining steps, indicating that

13  each users is interested in the other, both users are then notified of the match (step

14  [E]). In other words, as expert Klausner explains, the user IDs of the first two steps

15  are transformed into notifications to the users in the last step (Klausner ¶ 56).

16      All of this is disclosed in the patent. The user ID inputs of steps [A] and [B]

17  are received by processor 102 upon execution of program step 306 (Fig. 3) of

18  detector software 112 (Fig. 1), and these data are then transformed into a notification

19  in program step 410 (Fig. 3) (Klausner ¶¶ 40, 51). This notification, which represents

20  the output of method claims 1-27, may an email, information displayed on a web

21  page, or an automated telephone call (Klausner ¶ 56). That the notification may be

22  varied in both type and content reflects the patent's emphasis on confidentiality and

23  ─────────────────────

[3]   The claims in *Fuzzysharp Techs. Inc. v. 3D Labs Inc., Ltd.*, 2009 WL 4899215 (N.D. Cal. 2009) were drawn to mathematical calculations that "may be 'performed on a computer'" but, unlike here, not a particular computer and, unlike here, the computer "does not impose any meaningful limit on the claim scope as the computer merely performs the calculation." *DealerTrack v. Huber*, 657 F. Supp. 2d 1152, 1155-56 (C.D. Cal. 2009) concerned a "computer aided method" of managing credit applications but, unlike here, the patent did not specify how that computer was specially programmed to perform the method. Finally, in *Every Penny Counts, Inc. v. Bank of America Corp.*, 2009 WL 6853402 (M.D. Fla. 2009), the involvement of any machine in the claimed process imposed no limit on the process itself and was insignificant extra-solution activity.

1  anonymity (Ex. A, 1:38-44; Klausner ¶¶ 21-25, 56).

2      The transformation in method claim 1 is like other transformations that the

3  Federal Circuit has held patentable.  In the patent claims, the inputs are user IDs of

4  people in whom first and second users have an interest.  The claimed user IDs thus

5  represent something physical and tangible – persons.  These inputs are then

6  transformed into something else physical – notifications tangibly conveyed to the two

7  users via an email, an automated phone call, or via a web page.  This is the type of

8  data transformation that the Federal Circuit routinely finds to be patentable.  *See, e.g.,*

9  *Alappat*, 33 F.3d at 1544; *cf., In re Abele*, 684 F.2d 902, 908-09 (C.C.P.A. 1982)

10  (conversion of X-ray input data for display held patentable).

### 3.      The Apparatus Claims Are Not Abstract, And Satisfy Both Prongs Of The Machine Or Transformation Test

13      Defendants attempt to apply their arguments regarding the alleged invalidity of

14  the method claims to the apparatus claims, hand-waving that the apparatus claims do

15  not add any meaningful limitations to the invention (D Br. 19-21).  Defendants once

16  again ignore the claim language and claim construction.

17      Defendants' assertion that the apparatus claims of the '200 patent are directed

18  to an abstract idea is based almost entirely on *CLS Bank*, where the court found both

19  method and apparatus claims of several patents to be directed to unpatentable subject

20  matter under § 101.  But in doing so, the court found the apparatus claims at issue

21  there to be mere incarnations of the unpatentable method claims in apparatus claim

22  format.  2011 WL 802079, at *26.  Here, as discussed below, the method claims are

23  not unpatentable and, in any event, the '200 patent's apparatus claims recite particular

24  structure (*i.e.*, a computer processor, memory, input portions, means-plus-function

25  elements limited to disclosed hardware and software structures and equivalents, and

26  computer readable medium with specifically configured computer code) that impose

27  meaningful limitations on claim.

28

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

#### a.   Apparatus Claim 28

Claim 28 (and dependent claim 30) recites an "apparatus" that notifies people that they feel reciprocal interest for each other, comprising "input portions" for receiving user IDs, "determining portions," and a "notifying portion" (*supra*, p. 9). Properly construed based on the intrinsic and extrinsic evidence, the claimed "apparatus" must be a programmed computer. Like method claim 1, this follows from understanding the term "input" to mean "information entered into a ***computer or program*** for processing" (*supra*, p. 17; Klausner ¶¶ 59, 61). Thus, each claimed "input portion" must be a portion of a computer that performs the recited functions. The claim does not cover a human being, and most certainly does not wholly preempt the field of matching two people who are interested in one another (Klausner ¶ 60).

In fact, the intrinsic evidence demonstrates that ***all*** of the claimed "portions" are portions of a programmed computer. The Examiner said this about the various "portions" of application claim 27 (which issued as claim 28):

> It is the examiner's position that the word ***"portion" refers to various functional aspect of applicant's computer system, memory and database*** as described in the specification ... and not to separate devices in and of themselves.

(Ex. B, Pros. History at p. 156, (10/30/98 Office Action, p. 2)). Defendants' assertion that apparatus claims 28 and 30 are "abstract" thus ignores the intrinsic evidence. These claims do not embrace a human being as the claimed "apparatus."

Claims 28 and 30 also pass both prongs of the MOT test, for many of the reasons discussed for claim 1. The claims recite hardware and software portions of a computer apparatus providing specifically claimed functionality. As was the case with method claim 1, the "if and only if" limitation of element [E] invokes the confidentiality and anonymous benefits of the invention, and requires a computer to be achieved. The claimed computer "portions," therefore, are directed to a particular computer having the claimed portions providing the recited functionalities. The Examiner understood this, as discussed above (Klausner ¶¶ 59-60).

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

1     Moreover, these claims include the same type of transformation that claim 1

2 recites. Input data in the form of user IDs identifying specific persons (elements [A],

3 [B]) are transformed into physical notifications to the users (element [E]) upon the

4 determination of mutual matches (elements [C], [D]) (Klausner ¶¶ 61-63).

5             **b.**     **Means-Plus-Function Claim 29, And**

6                     **Article Of Manufacture Claim 31**

7     **Claim 29.**  Claim 29 recites four means-plus-function elements: "means for

8 receiving input ..." from first and second users, "means for determining ...", and

9 "means for ... if and only if ... notifying" (*supra*, pp. 9-10). It is black-letter patent

10 law that the "means" of each such means-plus-function element must each be

11 construed to be the specific structure(s) disclosed by the patent clearly linked to

12 performing the claimed functions, and equivalents. What's more, when the structure

13 for performing a claimed function is disclosed to be a programmed general purpose

14 computer, as is the case here, that corresponding must include the software

15 algorithms disclosed by the patent that program the computer to perform the claimed

16 function. *See, e.g.*, 35 U.S.C. § 112, ¶ 6; *Aristocrat Techs. Austl. Pty. Ltd. v. Int'l

17 *Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008) ("a general purpose computer in

18 effect becomes a special purpose computer once it is programmed to perform

19 particular functions"); *WMS Gaming v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed.

20 Cir. 1999) (software program "create[s] a special purpose machine for carrying out

21 the particular algorithm").

22     Expert Klausner has compared the means elements of claim 29 to the patent's

23 specification, and identified specific structures (hardware and software)

24 corresponding to each claimed means (*see* Klausner, ¶¶ 67-70). To say that such a

25 claimed machine is "abstract" and somehow wholly preempts the field of matching

26 two people who are interested in one another, is ridiculous.

27     Not surprising, claim 29 also passes both prongs of the MOT test. As the

28 elements must be construed to be the hardware and software disclosed in the patent

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

and equivalents, it is difficult to understand how the claim could not be tied to a particular machine. *Alappat* and the *WMS Gaming* demonstrate that claims 28 and 30 couldn't be more tied. Defendants do not address the law relevant to means-plus-function claims when wrongly asserting that there are only "semantic differences" between claims 1 and 29 (D Br. at 19). And, user IDs input in elements [A] and [B] are transformed into notifications in element [D] (Klausner ¶¶ 71-72).

**Claim 31.** Finally, claim 31 is for a "computer program product" comprising "a computer usable medium having computer readable code embodied therein" that configures a computer to have specifically recited functionalities. This claim is for an article of manufacture, which is a specifically authorized class of statutory subject matter. 35 U.S.C. § 101; *Chakrabarty*, 447 U.S. at 308; *In re Beauregard*, 53 F.3d 1583 (Fed. Cir. 1995). For reasons similar to those already discussed for the other apparatus claims, this claim is not abstract and also passes both prongs of the MOT test (Klausner ¶¶ 73-76).

## IV.   CONCLUSION

For at least the foregoing reasons, Defendants' motion should be denied.

Respectfully submitted,

Dated: June 13, 2011

**DYKEMA GOSSETT LLP**
Craig N. Hentschel
S. Christopher Winter

**ROPES & GRAY LLP**
Laurence S. Rogers
Ching-Lee Fukuda
Matthew J. Rizzolo

By: _____
Craig N. Hentschel

Attorneys for Plaintiff
Spark Networks USA, LLC

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071